The case on the calendar, U.S. v. Pocinoc. Good morning, your honors. This is Walter Mack. I represent the defendant appellant, Mr. Artem Pocinoc. I am prepared today to at least give status of his situation, but at least through immigration counsel, whom I discussed matters with, but in essence, he was released to ICE in June. He was removed to an immigration facility where he was from that time until through the immigration courts, he was permitted to be released. He was released in May of 2020, May 6 to be precise, was subject to supervised release by the probation department and for reasons that I cannot explain, but we do believe is directly related to the pre-sentence report and the situation that it's just false descriptions. He was rearrested this month on the determination, not by the immigration court, but basically of the view that the lower court immigration decision was wrong and that he should be subject to mandatory detention. Counsel has sought, he is incarcerated in, I believe it's Bergen County Jail at the moment where he is today. As far as we know, immigration counsel is in fact, they're trying to find out what technically was the basis for this rearrest. So that is his current situation. Our position has been from the outset that when we first, when the defense first saw the pre-sentence report, which is infected throughout with a false statement that there was a stipulation by the defendant that his criminality extended beyond his gambling plea. He never did so. And it was a plea agreement was very carefully negotiated. It was, and its terms were reaffirmed in the plea when it was, when it was taken and made that he, notwithstanding the government's view, which continues presumably today that he is a RICO enterprise member and extortionist, whatever else they threw at him in the original indictment, he never stipulated to that effect. And the point was made in the plea agreement. And we certainly acknowledge, and we did acknowledge in the plea agreement that they, that the court could consider, that judge Colvin could consider under 3553A characteristics that were described them. And we're not in any way opposing that that was fair, but we had a hearing, we had a lengthy sentencing hearing. The PSR is clearly incorrect. And the judge so acknowledged it during the sentencing proceedings and issued rulings that were inconsistent with what the PSR said. He specifically said at the, at the pages we referenced in our appeal that he was not making a finding of criminality. He reserved his right. He was going to, to quote, that he's going to presume the facts most favorable to the defendant with the exceptions that we argued at length during the sentencing proceeding, but it was certainly never. Yes, Judge Bianco, let me just, I understand what you're saying, but I just want to focus on two different, I think are the two issues in this case. And the second one, I think I'm going to question the government about, but this first issue that you're pointing on, I read the two lengthy proceedings and it went back and forth, back and forth. But to the extent that you are arguing to us that because of the inaccuracies in the pre-sentence report itself, that a district court has an obligation to correct those things because of collateral consequences they could have with the Bureau of Prisons and, or in this case, immigration, the federal, the rule says that the judge does not have to do that. That if there is a dispute about some fact in the report, if the judge is not going to rely on it, it's not going to affect the sentencing. The judge just has to note that under rule 32 I3B. And we have said, even when it's inflammatory in some way, in the case of U.S. Chambers Industries, Second Circuit, 1983, we made clear that a court just notes it's non-reliance, but does not have to, can, but does not have to delete the inaccurate statement from the report. To require district courts to do that, obviously, to go through things that aren't going to matter for sentencing, but because there's a lot of things in that report, a lot of facts that could may be inaccurate, have some other collateral effect if they were true, but if they're not relevant for sentencing, the court doesn't have to decide them under the rule and under the law. So that's, I just want to make clear that Judge Kogan, there was a backlog. Judge Kogan made very clear, I'm relying on four, he had four questions. Those questions were discussed and answered. He said, in addition to the guilty plea, these are the four facts that I'm relying on. And he basically said everything else is not affecting my sentence. I'm not finding any crimes. So he did what the rule requires. He made clear what four facts he was relying on and the rest of it he was not, right? Am I missing something on that? When you say relying, I mean, he made a determination arguably, I mean, or by a preponderance theory. Right, on those four facts. Yes, Your Honor. Everything else, he said, I'm going to construe this favorably to your client. I'm not considering it. He made reference, you noted that he said, I don't find any crimes on the other things. So I think what he said at the extent actually that you're coming back now and asking for the court to sort of reevaluate it because of the immigration consequences, we've decided in two cases, Giammo and Smalling, that a district court doesn't have the authority after the fact to start going back and making determinations on inaccuracies after the sentence happens. The only relief you have at this point, which I'm going to ask the government about, which may or may not be sufficient for what's not attached, the sentencing transcript in his statement of reasons said he incorporated the PSR without change, which is clearly incorrect. So the district court under rule 32 I 3 C is required to either in the statement of reasons indicate what the court is not considering in the PSR or what other rulings that is made or in lieu of that attach the sentencing transcript. So that to me is what this case is really about. Your Honor, if I may, may I respond, Your Honor? Yes. So our view is in the cases that you have cited to us, there were in both of those situations, if I recall correctly, that there was no contest of the PSR before the judgment and whatever went on. And that was the substance of those cases, that in fact, whatever challenges was going to made was made, I think, in one case many years after or or some time afterwards. And the court really did not have the opportunity that Judge Kogan did in this case because we started immediately to recognize the was highly prejudicial and the court ruled and agreed with one or the other. I know, but if the court just makes clear it's not relying on that erroneous fact, I'm saying to you, they don't, no, the court has no obligation to delete it. I have, you know, I have done as a district court, I have deleted things such as this because I understand they have collateral consequences with BOP in terms of where they designate you or in this case immigration. So but you don't have the obligation to do that is my point. There's no obligation under the law. If the government puts in a letter all these things, let's say, let's say it wasn't the PSR, let's say the government put in a letter, the defendant has stipulated X, Y, and Z, and it's clearly wrong. The court doesn't have to strike the government's letter. This court just says, I'm not relying on the government's letter. You don't have an obligation to strike the government's letter just because it erroneously says that there's some agreement, right? Your Honor, I would say that and we would read 32, first of all, we'd also look that the information under 32 D3C also refers to information that if disclosed might result in physical or other harm to the defendant. And basically, that is a must exclude. And when the pre-sentence report and the court basically permits the word crime to be included, which are the words that the immigration government counsel are using, that the judge found that crimes that occurred, the not only is our client in danger of being in a situation where theoretically he stipulated to others criminality, which is a possible threat situation, but more significantly, he is being armed. Here he is back in custody again, notwithstanding under a mandatory detention theory that was rejected by the court. So we would read that exclusion, the 30, 32 D3C is this is clearly information. And the word crime is a loaded term, Your Honor. And I mean, basically we're talking in the context when the word is used. And when you look at the statement of reasons, uh, not only does the court say adopt the PSR without change, but at the very end, uh, that the, when the basis for the variance and the variance went from a guideline six to 12 months to a 25 months, uh, the defendant pled less serious than his unpled crimes. So those, that is inaccurate. It has done harm. And I feeling is that we think that rule 36 as well as 32 governs, because given the record that is before the court, given the circumstances and the, the replete, uh, falsity of the PSR that rule 36, we see this that rule 36 permits a correction. Mr. Mack, this is Judge Katzman. I just have a couple of questions following up on Judge Bianco. I just want to be clear that your position is that the district court did not append a copy of the statement of reasons to the PSR. As far as we know, uh, it was not, I'm not certain. I know that immigration counsel has told us in the immigration court system, the immigration judge can request, I don't know whether they got the statement of reasons or not, but immigration counsel has said that, uh, that basically the statement of reasons is available to the immigration judge. I cannot say that in fact, the court, I know the court ruled in favor of the, our immigration position and rejected the government's view that this was a mandatory detention. Uh, the government immigration, uh, counsel appeal and we don't know why he was re-arrested earlier this month. Can you hear me? Can you hear me? I can't. Um, just so I'm clear. So you're saying you don't know whether the district court appended a copy of the statement of reasons to the PSR. Is that your view? I assume it was, uh, it was handled as statement of reasons normally are. Okay. Uh, second question, please. Um, I'm trying to understand what would be the purpose of directing the district court to attach the sentencing transcript to the PSR at this point. In other words, if you want the sentencing transcript for use in your immigration applications, why couldn't you just submit a copy of it with the application? Well, your honor, our preference would be a, a correction, which simply said that the defendant disputed and the court made no determination as to criminality beyond illegal gambling, which is what the record is. He is that, that would satisfy it. But it's it is pro licks. I am very familiar with what went on. Obviously judge Cogan disagreed and to some extent with our views. And if that is what is all that's left and entitled to us, uh, that would be, that would be necessary at least to try them to modulate the information that the PSR is accurate. It is not accurate. And the judge so determinative and having to deal with that puts our client in jeopardy jeopardy, which just out of the blue occurred three weeks ago. Thank you. You'll have, uh, if, uh, are there any other questions? No, thank you. Okay. Um, you'll have Mr. Mack, two minutes in rebuttal. We'll now hear from Ms. Spector. Good morning. And may it please the court. My name is Andre Spector and I represent the government on this appeal. I was also one of the prosecutors representing the government below. Mr. Pochnack appeals from judge Cogan's order denying his motion to change the BOP designation decision made over a year and a half ago. Mr. Pochnack has long been released from BOP custody. He does not challenge the district court's conclusion that it lacked authority to direct the BOP to which facility Pochnack should have been designated. Instead, he taxed the district court statement in that order that it would not amend the PSR because it had already addressed the objections that Pochnack continued to raise. The district court did not err in declining to amend the defendant's PSR a month after he had been sentenced. It had already ruled on the defendant's objections to the PSR after reviewing detailed submissions of exhibits and after holding two lengthy hearings. And in any event, at that point, the court did not have jurisdiction to amend the PSR based on contested objections, even if Pochnack's request had any merit. In his reply, he asserts for the first time that the court could have made the changes to the PSR under Rule 36, but that rule governs clerical errors, oversights, or typos that both parties agree on. And that's not what we have here. This was a heavily litigated sentencing where objections were made and objections were overruled based on unrefuted proof. The PSR should not and could not have been altered and the district court did not err in refusing to do so. Unless your honors have questions for me, I'll rest on our submission. I have some questions, Mr. Spector. I want you to focus on this issue of not, it's more than just not appending the Statement of Reasons potentially to the PSR. Even if it was appended, the Statement of Reasons is incorrect. Judge Kogan had checked the box saying that he adopted the pre-sentence report without change, which you were there, as you know, was not what he did. And as Mr. Mack knows, later in the report, it seems to suggest and it refers to unpled crimes, which seems to be inconsistent with what he determined. And, you know, he did find four additional facts, but I thought he was pretty clear that he was not finding any additional crimes to have been committed. So under Rule 36, you can, as you just noted, you can, for a clerical error, we're not talking about making new determinations on the PSR or even deleting things from the PSR. This is simply a clerical act of correcting the Statement of Reasons to conform to what Judge Kogan in fact did at the sentencing, or at a minimum, you know, attaching the transcript to the Statement of Reasons so that it's not as good as making clear, but at least then it would be part of what, you know, the record would be. It's required under the rule. So why is that not an error here? And it has an impact. Well, Your Honor, I disagree with the premise that Judge Kogan found some inaccuracy in the PSR. The PSR itself does not find that Mr. Pochenak is guilty of a crime and that he met every single element of a crime. It just noted bad acts, other bad acts. It's suspected that the PSR went on and on and on about all these additional facts. It made conclusions that everybody agreed were legal conclusions about whether or not it was criminal or not criminal. And Judge Kogan made clear he was not relying on any of that. So under the rule, he was making clear in sentencing you today, I'm not relying on any of that. But he also has an obligation then to make that clear in the Statement of Reasons. That's what I'm saying to you. Your Honor, I would just read what Judge Kogan said with respect to those other bad acts, which really mirrored the PSR. He said, for example, this is Appendix 311. The defendant is a member of a bad group. He's kind of like analogous to an associate of a crime family, but no doubt in it. Another finding, this is Appendix 291 to 292, he got public benefits by fraud, certainly gaming the system to get what he could get. He gave false information. These are things that, this is the evidence that we submitted. Did he not say, Mr. Spector, I don't have the site in front of me right now, but I read it myself. I remember. Did he not say on more than one time, other than these four facts for everything else that's in the PSR, I'm getting the benefit of the doubt to the defendant's version of those particular facts. Did he not say that? He did say that, Your Honor. All right. So that's a lot different than saying, you know, he was clear. He was not relying on those. He was not endorsing them in any way. And if someone didn't know, if someone didn't read that sign to transfer, they looked at the Statement of Reasons, they would have no idea. They would think that he adopted everything in that report. Your Honor, I would just say that the four questions, the four issues that the judge highlighted broadly captured almost all the bad acts that are captured in the PSR. So there was no, it would have been an error for the judge to sustain any objections that Mr. Mack made because there's no evidence supporting his objections. All the evidence was submitted by us. All right. Thank you. Thank you, Judge Gatsby. Okay. May I have two minutes, Your Honors, to rebut? Is Judge Gatsby still there? I think we may have lost him. Yes, I have no further questions. Judge Newman, do you have any questions? No, thank you. All right. Unless the government, do you want to wrap up? No, Your Honor. Unless Your Honor has any other questions, I'm happy to restart our submission. Thank you, Mr. Spector. Mr. Mack, you'll have two minutes in rebuttal. Thank you, Your Honor. The last statement of the government that all the facts, I mean, I will carefully negotiate a plea agreement. The plea was clear. Judge Kogan was clear as to what he was doing, what he said. We cited those pages and what have you. And the record as it stands is inaccurate. I could spend a half hour to 45 minutes, as I did before Judge Kogan, going through the PSR and disputing in many, many paragraphs dealing with the offense and without any basis for the comments is saying we stipulated to being part of an enterprise and what have you. We did not. That was arguably and is definitively clear before Judge Kogan as it could be. And he made it as clear in the record as possible that, in fact, he was not accepting the probation department. He was going to make whatever rulings he felt were appropriate. Those rulings were not findings as to crimes. They were character and behavioral tendencies or conduct that he determined. And he accepted the government's view in some cases, but not all. There was a hefty argument that went through, went through the arguments on Mr. Pochenik's side. The government had plenty of opportunity not to permit him to plead to a gambling plea, a gambling plea and the immigration world is not a crime of moral turpitude. The immigration court agreed with that view. And we are getting hammered again and again by a PSR, which is inaccurate, which was disputed the moment it was issued. And we got a copy and a lot of time was spent there. The record is on our favor. We don't know the reason he was just rearrested and what the circumstances are, but it is certain it was going to rely on the immigration's view that what other crimes are set forth in the PSR are the basis for mandatory detention. And that is what's going to be fought out in a bond hearing, hopefully soon, while my client, having been released, is now back in custody under the danger he is. We ask for some relief. If that relief is going to be appendage to the PSR, that is the transcript. Fine. That is better than having no relief, because as it stands, it hammers him and keeps him in jail and may have the result of sending a father who basically was agreed and only pled guilty to a gambling offense, which would have been legal had he done it in Brooklyn. We have your argument. We have your argument. Thank you very much. Thanks to both. The court will reserve the